UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDGAR E. COLEMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:18-CV-1750 RLW |
| ) | |
| DAN REDINGTON,[1] ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Edgar E. Coleman's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (ECF No. 1.) For the following reasons, the Court will deny the Petition.

**Procedural History**

Petitioner is incarcerated at the Northeast Correctional Center in the Missouri Department of Corrections pursuant to a judgment and sentence of the Circuit Court of St. Louis County, Missouri.

On June 4, 2014, a jury in St. Louis County Circuit Court found Petitioner guilty of three counts of resisting arrest and one count of burglary in the first degree. The jury acquitted Petitioner of charges of first-degree assault of a law enforcement officer, second-degree assault, and two counts of armed criminal action.

---

[1] Petitioner was housed at Jefferson City Correctional Center when he filed his § 2254 Petition. Dan Redington is the Warden of Northeast Correctional Center, where Petitioner is currently housed. Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Therefore, Dan Redington's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

On August 1, 2014, the trial court sentenced Petitioner as a prior and persistent offender under Missouri Revised Statutes § 558.016 to seven years' imprisonment on each count of the three counts of resisting arrest and to fifteen years for the burglary count, with all of the sentences to run concurrently with each other.

Petitioner appealed his conviction to the Missouri Court of Appeals and raised two claims of trial court error.  The Missouri Court of Appeals affirmed on September 18, 2015.  State v. Coleman, 468 S.W.3d 465 (Mo. Ct. App. 2015) (per curiam) (unpublished mem.) (Resp. Ex. H, ECF No. 10-8).

Petitioner timely filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15 (Resp. Ex. I, ECF No. 10-9 at 8-13). Petitioner's post-conviction counsel filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing on January 26, 2017 (id. at 21-29) that raised one claim of ineffective assistance of trial counsel: failure to request a jury instruction on justification by emergency or necessity as a defense to the first-degree burglary charge.  The motion court denied the postconviction motion without an evidentiary hearing on March 8, 2017 (id. at 36-41).  The Missouri Court of Appeals affirmed the motion court's denial of postconviction relief on February 20, 2018.  Coleman v. State, No. ED105528 (Mo. Ct. App. 2018) (per curiam) (unpublished mem.) (Resp. Ex. L, ECF No. 10-12).

**Pleading Standard**

Respondent first states that the Petition does not substantially comply with 28 U.S.C. § 2254 Rule 2(c), because Petitioner fails to state specific, particularized facts in support of his first three claims.  Instead, Petitioner makes references to specific exhibit attachments and seeks to incorporate the claims and arguments made in those exhibits into the Petition by reference.

The Eighth Circuit has held "that in order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990).  It is insufficient for a habeas petitioner to simply point to the state court record. See Adams, 897 F.2d at 333 (a "general reference to the transcripts, case records and briefs on appeal patently fails to comply with Rule 2(c)."); see also Wilson v. Larkins, 2009 WL 2069696, at *2 n.3 (E.D. Mo. July 10, 2009) (finding § 2254 petition failed to comply with the specificity requirement of Rule 2(c) where it stated petitioner sought habeas relief on the grounds he raised in his direct appeal brief and in post-conviction proceedings).

The Eighth Circuit has also held, however, that "a petition filed by a *pro se* petitioner should be 'interpreted liberally and . . . should be construed to encompass any allegation stating federal relief.'" Harris v. Wallace, 984 F.3d 641, 647 (8th Cir. 2021) (quoted case omitted) (claim was sufficiently pleaded where supporting facts were not written on the habeas form but were stated in the attachment included with the petition, which comprised a single filing).

Here, the Petition's first three grounds are conclusory, and each of the grounds refers the Court to multiple attached exhibits without specifying the relevant page numbers.  (See ECF No. 1 at 4, 6, 7).  Only the Petition's fourth ground sets forth facts and legal citations in support but, as discussed below, this ground is not cognizable.  (Id. at 10).  In the interests of justice, the Court will liberally construe the Petition despite Petitioner's failure to comply with Rule 2(c), particularly where Respondent did not move to dismiss on this basis and was able to discern and respond to the issues Petitioner raises.

## Grounds Raised

Petitioner filed the instant Petition for habeas relief in federal court on October 12, 2018 (ECF No. 1).[2]  Respondent filed a response in opposition with supporting exhibits on March 25, 2019 (ECF No. 10).  Petitioner filed a Traverse in support of his Petition on September 9, 2019 (ECF No. 16).  The Petition raises the following grounds:

(1) The trial court erred in overruling Petitioner's motion for acquittal at the close of all the evidence disputing the sufficiency of the evidence on the charge of first-degree burglary;

(2) The trial court plainly erred in accepting the verdicts and sentencing Petitioner for two counts of resisting arrest, instead of only one count, in violation of his right to be free from double jeopardy and his statutory rights under § 556.041, Missouri Revised Statutes (2000);

(3) Trial counsel was ineffective for failing to request a jury instruction on the justification defense as to the first-degree burglary charge; and

(4) The State of Missouri's post-conviction remedy is generally deficient, and post-conviction counsel was ineffective.[3]

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently

---

[2]Ten exhibits consisting of approximately 170 pages are attached to the Petition.

[3]Ground Four in the Petition reads exactly as follows:

GROUND FOUR:  STATE POSTCONVICTION REMEDY WAS A SHAM AS "PD" JUST THROWED IT TOGETHER ALONG WITH APPEAL THERE WAS OBSTRUCTION OF JUSTICE
    (a) Supporting facts.  Do not argue or cite law.  Just state the specific facts that support your claim:
FEDERAL COURTS IN CHURCH V. STATE OF MISSOURI, 2017 US DIST LEXIS (WDMO 2017) FOUND PD AGENCY INCOMPETENT AND THAT RESORTINT TO ABANDONMENT AND THAT REMEDY WAS AND IS INEFFECTIVE FOR SUCH WRONGS.  THE PD JUST THROWED THE PCR TOGETHER AND LOCKED IT IN ON APPEAL.  PETITION FILED RECALL MANDATES, FILED IN CIRCUIT COURT CHARGING CORRUPTION AND IT WAS DENIED IGNORED

(ECF No. 1 at 10).

incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)). Because the Court determines that Petitioner's claims do not warrant habeas relief on their face, it will deny the Petition without an evidentiary hearing.

**Factual Background**

The post-conviction motion court described the facts of Petitioner's criminal case and post-conviction claims as follows:

> On the evening of October 13, 2012, Officer Tonya Bressie of the Overland Police Department responded to a dispatch call of a possible burglary occurring at 9413 Liberty Avenue in Overland, Missouri. Upon arrival, Officer Bressie saw a man later identified as Movant leaving the residence and approaching his truck. Officer Bressie ordered Movant to put his hands up and step away from the vehicle. Then, Officer Dinges responded to the residence and the officers searched Movant for weapons. Corporal John Yust also arrived on the scene during the encounter.
>
> The officers questioned Movant, who told them his name was "Russell Coleman." Officer Bressie conducted a computer search to verify Movant's identity and determined Movant gave them a false name. Movant told the officers he was living in the house with his girlfriend and her son. Movant said he had keys to the house and that the officers could call his landlord to verify his lease.
>
> Notwithstanding Movant's statements, the officers believed the residence was vacant and scheduled to be torn down.[3] After the officers also noticed some copper piping in the back of Movant's truck, they suspected Movant was stealing copper pipes from vacant houses. When asked about the pipes, Movant said he was working on a house for a man named "Nick," for whom he had a phone number but needed to charge his cell phone to retrieve it. Corporal Yust gave Movant permission to connect his phone to a charger in Movant's truck, so Movant got in the truck. When Movant started the truck, Corporal Yust yelled at him to stop but Movant started driving. After Corporal Yust was unable to stop Movant, he yelled at Officer Bressie to "watch out" and she was able to jump out of the truck's path to avoid being hit.
>
> Movant drove off at high rate of speed and Officer Bressie engaged in a chase until she lost sight of Movant's truck. When Officer Bressie found the truck, it was abandoned in a subdivision and the driver's door was left open.

---
[3]However, Officer Bressie eventually spoke with Movant's landlord and verified that Movant was living at the residence.

5

The next day, October 14, Theodore Slein went to the basement of his home on Dielman Road in Olivette, Missouri to do laundry. Mr. Slein noticed a window pane had been removed from a door leading from the basement to outside. As Mr. Slein was outside taking pictures of the missing window pane to give to the police, Movant exited the basement and ran away. Mr. Slein yelled at Movant, chased him, and took pictures of him during the chase. After he returned to his basement, Mr. Slein found a bed made out of a piece of carpet, a blanket, and a pillow. This makeshift bed was not there prior to Movant being in the basement.

On October 18, Officer O'Brien and Sergeant Schneider of the Olivette Police Department responded to a residence in Overland to look for Movant. After he saw the officers, Movant ran out of the house to the backyard, where the officers confronted him. Although he initially started to cooperate with the officers, Movant took off running and Officer O'Brien chased him until he lost sight of Movant. Shortly thereafter, Officer Justin Lydon of the Overland Police Department, who received a dispatch call about the foot pursuit, located Movant in the rear parking lot of a construction store. When Movant saw the marked police vehicle, he began running east. Officer Lydon chased Movant on foot until he caught up to Movant behind a convenience store. Movant initially tried to fight Officer Lydon but he gave up after another officer arrived. The officers handcuffed Movant and found a knife on his person.

The jury found Movant guilty of first-degree burglary and resisting arrest. The trial court then entered a judgment in accordance with the jury's verdict and sentenced Movant as a prior and persistent offender to seven years of imprisonment on each of the three counts of resisting arrest and fifteen years of imprisonment on the first-degree burglary charge, with the sentences to run concurrently. Movant filed a direct appeal, and this Court affirmed his convictions and sentences in State v. Coleman, 468 S.W.3d 465 (Mo. App. E.D. 2015).

(Resp. Ex. L, ECF No. 10-12 at 3-5).

**Legal Standard**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing § 2254(a)).

6

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules. Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted). In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid procedural default." Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). See Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A State court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme

Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A State court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established federal law does not suffice to support a grant of habeas relief. Instead, the State court's application of the law must be objectively unreasonable. Id. at 409-11; Jackson v. Norris, 651 F.3d 923, 925 (8th Cir. 2011).

Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet." Id.

8

### Noncognizable Claim

In Ground Four of the Petition, Petitioner asserts that the "State post[-]conviction remedy was a sham as 'PD' just throwed [sic] together along with appeal there was obstruction of justice." (ECF No. 1 at 10). In support, Petitioner cites to federal litigation concerning the funding and competency of the Missouri State Public Defender System generally. (Id.). Petitioner also appears to complain about the competency of his post-conviction counsel and his inability to obtain relief during his post-conviction relief. (Id.). These conclusory allegations fail to state a cognizable claim for federal habeas relief.

Ineffectiveness of post-conviction counsel is not an independent ground for relief under § 2254. See 28 U.S.C. § 2254(i). Further, there is no Sixth Amendment right to post-conviction counsel. Coleman v. Thompson, 501 U.S. at 752; see Christenson v. Ault, 598 F.3d 990, 995-96 (8th Cir. 2010) ("There is no federal constitutional right to the effective assistance of post-conviction counsel.") (quoted case omitted). Therefore, Coleman's independent claim of ineffective assistance of post-conviction counsel is not cognizable.

Similarly, "the conduct of the state post-conviction relief court cannot constitute independent grounds for federal habeas relief." Jolly, 28 F.3d at 54. "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." Williams-Bey, 894 F.2d at 317; see also Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (same).

### Procedurally Defaulted Claim

In Ground Two of the Petition, Petitioner claims the trial court plainly erred in accepting the jury's verdict on two counts of resisting arrest for his conduct on October 18, 2012, instead of

9

only one count, because doing so violated Petitioner's right to be free from double jeopardy and his statutory rights under § 556.041, Mo. Rev. Stat. In state court, Petitioner argued that the two charges of resisting arrest arose from one continuing course of conduct with no discernable break between the two events.

Although Petitioner raised this claim on direct appeal, he conceded in state court that he did not raise it at the trial court level. (Resp. Ex. E, ECF No. 10-5 at 19). The Missouri Court of Appeals found that Petitioner did not preserve the claim of error. (Resp. Ex. H, ECF No. 10-8 at 8-9). A claim must be presented at each step of the judicial process in state court in order to avoid procedural default. Jolly, 28 F.3d at 53. The Missouri Court of Appeals reviewed the merits of the unpreserved double jeopardy claim for plain error and found none, after analyzing double jeopardy precedent, the Missouri statute under which Petitioner was charged, Missouri's general cumulative-punishment statute, and the facts of the case. (ECF No. 10-8 at 9-14.)

A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." Clark v. Bertsch, 780 F.3d 873, 874 (8th Cir. 2015). Instead, this Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim. Coleman, 501 U.S. at 750.

Ineffective assistance of counsel can, in some instances, constitute cause for excusing a procedural default, but at the very least it must be ineffectiveness that rises to the level of a Sixth Amendment violation. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). Even then, there must be an accompanying ineffective assistance of counsel claim for failure to raise the procedurally defaulted claim. See id. at 452 ("[A] claim of ineffective assistance, we said,

10

generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (citing Murray v. Carrier, 477 U.S. 478, 489 (1986)) (internal citations omitted).  Here, Petitioner did not raise an accompanying ineffective assistance of counsel claim for failure to present the procedurally defaulted claim.  As a result, Petitioner fails to demonstrate cause for his procedural default.

If a prisoner fails to demonstrate cause, the court need not address prejudice.  Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).  Nor has Petitioner shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim.  Petitioner has presented no new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006); Weeks v. Bowersox, 119 F.3d 1342, 1352-53 (8th Cir. 1997).

Consequently, the claim raised in Ground Two is procedurally barred from habeas review and will be dismissed.

## Claims Addressed on the Merits

The record shows Petitioner properly raised the following claims in State court and that the Missouri Court of Appeals denied relief on review of the merits.  The Court turns to the merits of the claims, exercising limited and deferential review of the underlying State court decisions as required by the AEDPA.

A. Ground One – Trial Court Error – Denial of Motion for Acquittal on Burglary Charge

In Ground One, Petitioner asserts the trial court erred in denying his motion for acquittal at the close of all the evidence because the evidence was insufficient to support his conviction of first-degree burglary.  Petitioner argued the State failed to prove that he entered Mr. Slein's home for the purpose of resisting arrest.  (Resp. Ex. H, ECF No. 10-8 at 2).  Specifically, Petitioner claims the State failed to prove that any attempted arrest was in progress when he entered Mr.

Slein's home, because Officer Bressie had abandoned her pursuit the evening before Mr. Slein discovered Petitioner in his basement on the following afternoon. (Id.)

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference. The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim on direct appeal as follows:

> In his first point on appeal, the defendant claims the trial court erred in overruling his motion for acquittal at the close of all the evidence on the charge of first-degree burglary. He contends that the State failed to prove he entered Mr. Slein's home for the purpose of resisting arrest. Specifically, he argues the State failed to prove that any attempted arrest was in progress at the time he entered the residence, given that Officer Bressie had abandoned her pursuit the evening before Mr. Slein discovered the defendant in his basement the following afternoon.
>
> We review the denial of a motion for judgment of acquittal to determine whether the State adduced sufficient evidence to make a submissible case. *State v. Brown*, 457 S.W.3d 772, 779 (Mo. App. E.D. 2014). Our role is to determine whether sufficient evidence was produced at trial to allow a reasonable juror to conclude that the defendant was guilty. *Id*. In determining whether the evidence is sufficient to support a conviction, we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding all contradictory evidence and inferences. *Id*.
>
> A person commits the crime of first-degree burglary if he knowingly enters unlawfully, or knowingly remains unlawfully, in a building or inhabitable structure for the purpose of committing a crime therein, and when effecting entry or while in the building or inhabitable structure, there is a person present in the structure who is not a participant in the crime. Section 569.160.1(3). The State charged the defendant with first-degree burglary for knowingly entering unlawfully an inhabitable structure while it was occupied by Mr. Slein for the purpose of committing the offense of resisting arrest.
>
> The defendant was charged and convicted of resisting arrest based on his flight from Officer Bressie on October 13, 2012, when she sought to arrest him for committing first-degree assault on a law-enforcement officer and armed criminal action. The defendant has not appealed this resisting-arrest conviction, and it is affirmed. A person commits the crime of resisting or interfering with arrest, detention, or stop, if he knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he resists the arrest, stop or detention by using or

12

threatening the use of violence or physical force or by fleeing from such officer. Section 575.150.1(1) RSMo. (Supp. 2014).

The defendant acknowledges that the evidence was sufficient to show that he knowingly entered unlawfully into Mr. Slein's residence, and that Mr. Slein was present when the defendant did so. The challenge the defendant asserts is whether the State proved that he entered the residence for the purpose of committing the crime of resisting arrest. We reiterate that the defendant has not contested the sufficiency of the evidence to support this conviction for resisting arrest. We conclude that the evidence was sufficient to show that the defendant entered Mr. Slein's residence to prevent police from effecting his arrest.

The evidence revealed that police responded to the report of a possible burglary in progress at 9413 Liberty Street in the city of Overland at about 8:30 on the evening of October 13, 2012. Officer Bressie stopped the defendant at that location as the defendant came out of the house. Corporal Yust and another officer arrived, and police began investigating the defendant, who had old copper pipes in the back of his truck and who gave officers a false name. Although officers initially believed that the house where they encountered the defendant was vacant, officers verified that the defendant did, in fact, have the landlord's permission to live at the Liberty Street address.

The defendant got in his truck under the pretense of plugging in his cell phone to obtain a telephone number so the police could contact his employer about the copper pipes. However, the defendant quickly started his truck. While Corporal Yust tried to stop him, the defendant "stomped on the gas" and accelerated down the driveway at a high rate of speed toward Officer Bressie and B.W., the nine-year-old son of the defendant's girlfriend. Officer Bressie grabbed B.W., and leapt from the driveway onto the lawn to avoid being struck. The defendant fled the scene at a high rate of speed, and Officer Bressie pursued him.

The defendant's efforts to evade Officer Bressie demonstrate that he knew the officer was pursuing him in order to arrest him. Officer Bressie pursued the defendant, losing sight of him heading south on Woodson soon after leaving the Liberty Street house. She observed the defendant again some distance away at the intersection of Olive and McKnight, and with her car's lights and siren activated, pursued the defendant's truck south on McKnight and then west on Delmar as it accelerated at a high rate of speed, swerved around another vehicle into the oncoming lane of traffic, and ran a stop light. At that point, the defendant reasonably should have known that Officer Bressie was attempting to arrest him for driving his truck at her and at B.W. Officer Bressie saw the defendant enter Ames Place subdivision at Delmar and Price, which she believed to be located in either the city of Olivette or the city of Ladue. She lost the defendant in the subdivision, but found his truck abandoned on a dead-end street, driver's-side door open, with the defendant's keys still in the ignition and his dog inside. Officer Bressie

> identified for the jury the above locations and the defendant's route on a map admitted into evidence as State's Exhibit 3.
>
> At about 4:00 the following afternoon, Mr. Slein went to his basement in the 300 block of Diehlman Road in Olivette. Mr. Slein noticed that a window pane had been removed from his exterior basement door. While Mr. Slein was outside taking photos of the broken door, he encountered the defendant coming out of his basement. He chased the defendant, took photos of him, and called the police. Mr. Slein also discovered a makeshift bed made of items collected from his basement, concealed behind shelves located near the exterior basement door. He testified there had been a severe storm the night before, which was the night that the defendant led Officer Bressie on an extended chase. Mr. Slein identified for the jury the location of his home on the area map introduced earlier by the State as Exhibit 3.
>
> Under our standard of review, we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict. *Brown*, 457 S.W.3d at 779. Here, the defendant reasonably should have known that the police were attempting to arrest him for driving his truck at Officer Bressie and B.W. The jury could reasonably find that the defendant fled from Officer Bressie at a high rate of speed, abandoned his vehicle when he reached a dead-end street in a residential neighborhood, and then fled on foot to Mr. Slein's home. Thus, the jury could reasonably conclude that the defendant knowingly entered unlawfully Mr. Slein's residence while Mr. Slein was present for the purpose of preventing officers from completing his arrest. The presence of the makeshift bed assembled by the defendant in Mr. Slein's basement supports the reasonable inference that the defendant spent the night of October 13th there after fleeing from police, rather than returning to his own home on Liberty Street where police could complete his arrest. We deny the defendant's first point.

(ECF No. 10-8 at 4-8) (footnotes omitted).

A state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court. Jackson v. Virginia, 443 U.S. 307, 323 (1979). Under Jackson, a habeas petitioner is entitled to relief if a federal habeas court "conclude[s] that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015). In applying this standard, the federal habeas court does not re-weigh the evidence and must resolve any inconsistencies in favor of the prosecution. Id. Under the AEDPA, the Court may grant relief only if it finds the Missouri Court of Appeals' "conclusion that the evidence satisfied

14

the Jackson sufficiency of the evidence standard both incorrect and unreasonable." Id. "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.'" Cassell v. Lockhart, 886 F.2d 178, 179 (8th Cir. 1989) (quoted case omitted).

Upon review of the record, the Court concludes the Missouri Court of Appeals' determination that the trial court did not err in denying Petitioner's motion for judgment of acquittal at the close of all the evidence on the first-degree burglary charge is entitled to deference. The Court cannot say on the record evidence adduced at the trial that no rational trier of fact could have found proof of guilt beyond a reasonable doubt on the first-degree burglary count. See Nash, 807 F.3d at 897. The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379.

Consequently, the Court will deny this ground for habeas relief.

B.  Ground Three – Ineffective Assistance of Counsel for Failure to Request Jury Instruction

In Ground Three, Petitioner reasserts his post-conviction appeal claim that trial counsel was ineffective for not requesting a justification defense instruction to the charge of first-degree burglary. Petitioner argues that his counsel should have requested the instruction because he was justified in seeking shelter in Mr. Slein's basement to avoid a storm.

The post-conviction motion court denied Petitioner's claim without a hearing, finding that the justification defense instruction was not supported by the evidence. (Resp. Ex. I, ECF No. 10-9 at 37-38). The Missouri Court of Appeals affirmed the denial of post-conviction relief, holding

15

that counsel was not ineffective for failing to request the instruction because Petitioner's allegations were insufficient to show he would have been entitled to a justification defense instruction if his attorney had requested it. Respondent argues the Missouri Court of Appeals' decision denying this claim on the merits is reasonable and entitled to deference.

The Missouri Court of Appeals reasoned:

> In his sole point on appeal, Movant argues the motion court erred in denying his motion for post-conviction relief based on his claim Counsel was ineffective for failing to request an instruction on the justification defense as to the first-degree burglary charge. We disagree.
>
> A defendant is entitled to an instruction on the justification defense under section 563.026.1 RSMo 20005 "when the claimed facts and circumstances, if true, are legally sufficient to support the instruction." *State v. Harding*, 528 S.W.3d 362, 379 (Mo. App. E.D. 2017) (quotations omitted); *State v. Karr*, 968 S.W.2d 712, 716 (Mo. App. W.D. 1998) (quotations omitted). Section 563.026.1 provides in relevant part:
>
>> . . . [C]onduct which would otherwise constitute any crime other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime charged.
>
> The application of the justification defense is limited to circumstances in which:
>
>> (1) The defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.
>
> State *v. Cox*, 248 S.W.3d 1, 7 (Mo. App. W.D. 2008) (quoting *State v. Stewart*, 186 S.W.3d 832, 834 (Mo. App. S.D. 2006)); *State v. Burkemper*, 882 S.W.2d 193, 199 (Mo. App. E.D. 1994) (quotations omitted). Additionally, an instruction on the

justification defense is only warranted where the situation was "developed through no fault of the actor." *Harding*, 528 S.W.3d at 379 (quoting section 563.026.1).

Our review of the record reveals Movant has failed to adequately plead facts demonstrating the facts and circumstances adduced at his trial were legally sufficient to support an instruction on the justification defense. *See Harding*, 528 S.W.3d at 379; *Karr*, 968 S.W.2d at 716. Specifically, Movant alleged in his amended motion that there was a storm on the night of October 13, 2012. Movant alleged he was homeless, in that he "had been living in a house that [appeared] to be abandoned, pending the building of a [Quik Trip], or wherever he was able."[6] The motion continues to state Movant had fled from the police after being accused of copper theft, and by the time he entered Mr. Slein's home, he had evaded the police but was caught in a storm. As to the danger Movant allegedly faced, the motion states, "Storms in Missouri are often very hazardous. In addition, temperatures in October are routinely under [fifty] degrees – where there is a danger of hypothermia if one is wet and outdoors."

The preceding allegations are insufficient to show Movant would have been entitled to an instruction on the justification defense had Counsel requested it. Movant has not and cannot establish he was in the situation through no fault of his own where it is undisputed Movant created his predicament by fleeing from the police and leading Officer Bressie on a high-speed chase. *See Harding*, 528 S.W.3d at 379; section 563.026.1. Moreover, Movant did not allege facts showing the circumstances to which the justification defense has been limited were present in this case. *See Cox*, 248 S.W.3d at 7; *Stewart*, 186 S.W.3d at 834; *Burkemper*, 882 S.W.2d at 199. While Movant attempted to plead facts to satisfy the first requirement, the allegation that there was a storm on the night Movant burglarized Mr. Slein's home was insufficient to establish Movant faced a clear and imminent danger. *See id*. Even as described in the amended motion, including the statistics that Missouri storms are "often very hazardous" and temperatures in October are "routinely under [fifty] degrees," the danger allegedly facing Movant is debatable and speculative. *See id*.

Based on the foregoing, Movant has failed to allege facts demonstrating the trial court would have given an instruction on the justification defense had Counsel requested it. Accordingly, as a matter of law, Counsel was not ineffective for failing to request such an instruction. *See Jones v. State*, 495 S.W.3d 789, 793 (Mo. App. E.D. 2016) (as a matter of law, it is not ineffective assistance of counsel to fail to request an instruction that is not supported by the evidence); *see also Nicklasson*, 105 S.W.3d at 486 and *Barcelona*, 524 S.W.3d at 569 (the motion court is not required to hold an evidentiary hearing where the motion and record conclusively show the movant is not entitled to relief). Therefore, the motion court did not clearly err in denying Movant's claim for post-conviction relief. Point denied.

---

[6]The allegation that Movant was homeless was actually refuted by the record. As highlighted by Movant's brief on appeal, Officer Bressie spoke with Movant's landlord to verify that Movant was living at the residence on Liberty Avenue.

17

(ECF No. 10-12 at 7-9) (footnote 5 omitted).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland.  To establish ineffective assistance, a petitioner must show (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense."  Id. at 687-88.  Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, this Court does not determine whether Petitioner's trial counsel provided effective assistance, but instead examines "whether the state court's application of the Strickland standard was unreasonable."  See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  The standard on federal habeas review "is different from asking whether defense counsel's performance fell below Strickland's standard."  Harrington, 562 U.S. at 101.  Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id. at 105.  "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Gray v. Norman, 739 F.3d 1113, 1117 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 690).  "Where a state court

concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal court then must review counsel's performance under the 'deferential lens of § 2254(d).'" Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

On post-conviction appeal, the Missouri Court of Appeals applied the Strickland standard and found as a matter of law that trial counsel was not ineffective for failing to request a justification defense instruction, because Petitioner "failed to allege facts demonstrating the trial court would have given an instruction on the justification defense had Counsel requested it." (ECF No. 10-12 at 9).

The Court determines that the Missouri Court of Appeals' application of the Strickland standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by that court. See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101. Consequently, the Court will deny this ground for habeas relief.

**Conclusion**

For the foregoing reasons, the Court concludes that the grounds in Petitioner Edgar E. Coleman's Petition for Writ of Habeas Corpus are either noncognizable, procedurally barred, or fail on the merits, and must be denied in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Dan Redington's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

**IT IS FURTHER ORDERED** that Petitioner Edgar E. Coleman's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Coleman has not made a substantial showing of a denial of a constitutional right or that it is debatable whether the Court's procedural rulings are correct, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 26th day of January, 2022.